UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

RALPH GAMBLES, individually and as a
representative of the classes,

Plaintiff,

-against-

STERLING INFOSYSTEMS, INC.

Defendant.

------------------------------------------------

Case No.: 1:15-cv-09746-PAE

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**(JURY TRIAL DEMANDED)**

Ralph Gambles ("Plaintiff"), on behalf of himself, the Classes set forth below, and in the public interest, brings this First Amended Class Action Complaint against Sterling Infosystems, Inc. ("Defendant").

## PRELIMINARY STATEMENT

1.      This is a case about holding Defendant accountable for its willful failure to follow federal laws governing the content of consumer reports.  Despite having been sued in a previous class action for essentially the same conduct alleged herein, and despite settling that case for both monetary and injunctive relief, Defendant has persisted in breaking the law and its promises to consumers.

2.      Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the Fair Credit Reporting Act ("FCRA").  15 U.S.C. § 1681, *et seq.*

3.      As further discussed herein, Defendant has willfully violated the FCRA by systematically reporting adverse information on consumers which antedates the report by more than seven years, despite 15 U.S.C. § 1681c(a) explicitly prohibiting the inclusion of such information.

4.      Specifically, Defendant reports certain consumer address information as a "high risk indicator" because Defendant claims that certain consumer addresses are associated with one or more of the following: hotels, motels, rooming houses, boarding houses, or personal care facilities.  Defendant labels consumers as having this "high risk indicator" even when the address which is the cause of the indicator is one that Defendant's own reports indicate the consumer has not been "seen" at for more than seven years.

5.      Adding insult to injury, Defendant fails to maintain reasonable procedures to ensure the addresses it labels as being affiliated with this "high risk" housing are even, in fact, the kind of buildings Defendant's reports indicate them to be.  In fact, many of the buildings Defendant labels as "high risk" are just regular apartment buildings.

6.      Moreover, Defendant's report on Plaintiff includes multiple duplicative entries for the same address, making it appear as though Plaintiff has lived at fifty-three different locations, when in reality, the report only includes nineteen unique addresses.  The dates Defendant includes which purport to be the dates Plaintiff was "first" and "last" seen at these various addresses contradict one another and are internally inconsistent, with different "first" and "last" dates appearing for the same address.

7.      By labeling job applicants as "high risk" based on unconfirmed information about the kinds of places they supposedly lived more than seven years ago, Defendant has taken away the protection the FCRA affords consumers against being judged based on old, and frequently inaccurate, information.

8.      Defendant's actions are all the more egregious because Defendant *knows* that including old, adverse, and inaccurate information in its reports violates the law.  Defendant was sued in a separate class action lawsuit in 2012 for reporting outdated adverse information, and

the final settlement in that case resulted in Defendant paying over $4 million to resolve those claims against it. *Ernst v. DISH Network, LLC*, No. 12-cv-8794, ECF No. 237 (S.D.N.Y. Nov. 13, 2015).

9. Yet, rather than producing accurate reports which only contain lawfully reportable information, Defendant continues to prefer to produce cheap, inaccurate and outdated reports which create the false appearance of being comprehensive and insightful.

10. Through this pattern and practice of related violations, Defendant has consistently undermined Congress's carefully struck balance, unlawfully placing its business interests above the rights of consumers.

11. Based on Defendant's conduct, Plaintiff asserts FCRA claims on behalf of himself and three Classes of consumers. On behalf of himself and the Classes, Plaintiff seeks statutory damages, punitive damages, attorneys' fees, expenses, costs, and all available other appropriate relief.

## THE PARTIES

12. Individual and representative Plaintiff Ralph Gambles is a resident of Birmingham, Alabama.

13. Defendant Sterling Infosystems, Inc. is a corporation doing business throughout the United States, including in Manhattan, New York. Defendant is headquartered in New York, New York.

14. According to its website, Defendant is the "the world's largest company focused entirely on background checks with offices in the United States, Canada, the U.K., India and the Philippines." *See* http://www.sterlingbackcheck.com/About/Company-Profile.aspx (site last visited December 14, 2015, attached as Exhibit 1).

15.     Defendant is a consumer reporting agency within the meaning of the FCRA because for monetary fees, it engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such reports.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATUTORY BACKGROUND

18.     The FCRA was enacted based on Congress's findings that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681.  Thus, the FCRA requires consumer reporting agencies to operate "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  *Id.*

19.     To ensure that consumer reporting agencies report information in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information," the FCRA prohibits consumer reporting

agencies from reporting old information.  Specifically, agencies are forbidden from reporting the following:

> (5)  Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c(a).

20.     The FCRA also requires that consumer reporting agencies maintain reasonable procedures to ensure "maximum possible accuracy" of the information included in the reports they produce.  *See* 15 U.S.C. § 1681e(b).

21.     Defendant systematically and purposefully disregards its "grave responsibilities" by routinely reporting outdated, adverse, and inaccurate "high risk" address information on consumers in violation of the FCRA.

## ALLEGATIONS RELATING TO NAMED PLAINTIFF GAMBLES

22.     In January of 2014, Plaintiff applied for work as a mortgage banker.  The yearly salary for the position for which Plaintiff applied was under $75,000.

23.     On or around January 29, 2014, Defendant furnished a background report on Plaintiff to Plaintiff's prospective employer.  A redacted copy of the report is attached hereto as Exhibit 2.

24.     Plaintiff's report and the reports of other class members were not procured in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

25.     The report Defendant furnished to Plaintiff's prospective employer purported to contain information regarding various places Plaintiff had lived.  This information was presented under the heading "Social Security Trace for County Searches."

26.     The "Social Security Trace for County Searches" section of Plaintiff's report included no fewer than fifty separate entries, each of which purported to identify an address where Plaintiff had lived.

27.     Each address entry contains a date which is identified as the "first seen" date and one which is identified as the "last seen" date.  These dates are meant to correspond with the period during which the consumer lived at the address.

28.     Many of these addresses included on Plaintiff's report are duplicative of one another, and some of the time periods associated with different addresses overlap with one another.

29.     Despite the fact that Defendant's report contains 53 total address entries, it only contains 19 unique addresses.  Moreover, the "first" and "last" seen dates for a number of these addresses contradict one another, meaning that some of the entries are, by definition, inaccurate.  (*See, e.g.*, Ex. 2 at 5, listing two identical addresses, one entry showing a "first seen" date of 4/2012 and the second entry for the same address showing a "first seen" date of 5/2011.)

30.     The earliest "first seen" address date included in Plaintiff's report is June 2000. The latest "last seen" date is December 2013.

31.     Several of the addresses included in Plaintiff's report bear a warning statement about Plaintiff.  Specifically, these addresses state that they are a "high risk indicator."  The phrase "high risk indicator" is then followed by some sort of description purporting to describe the nature of the property located at the "high risk" address.  On Plaintiff's report, the following kinds of abodes are all labeled as "high risk indicators":  hotels, motels, rooming houses, boarding houses, and nursing and personal care facilities.

32.     In total, the phrase "high risk indicator" appears eight times on Plaintiff's report.

33.     Of the eight instances in which Defendant labeled Plaintiff as "high risk," three pertain solely to an address where Plaintiff is identified as having been "first seen" in July 2005, and as having been "last seen" in October 2005.  The entirety of this period antedates the date of the report by more than seven years.

34.     Accordingly, Defendant's report on Plaintiff unlawfully includes three items of information which are adverse to him, and which pertain to a period that antedates the report by more than seven years.  The inclusion of this information in Plaintiff's report violates the plain language of 15 U.S.C. § 1681c.

35.     Defendant's report is also inaccurate on its face, as there cannot be multiple dates on which Plaintiff was "first seen" or "last seen" at a given address.

36.     Defendant's report is also inaccurate with respect to the address history in a myriad of additional ways, a non-exclusive list of which is below:

a)      On page three of report (using the pages number on the bottom right of the page), seven entries appear for addresses in Birmingham, Alabama: four on "Avenue S" and three on "Avenue F," with different and overlapping "first seen" and "last seen" dates.   In fact, Plaintiff lived only in one location in Birmingham (on Avenue S), for three years.

b)      On page four, the report lists an address on Liberty Walk Drive in Round Rock, Texas three times, each time with "first seen" and "last seen" dates in 2013.   In fact, Plaintiff lived at that address on one occasion in 2010.

c)      Also on page four, the report contains three separate entries for an address on East Central Texas Expressway, in Killeen, Texas.  Each entry contains the notation: "HIGH  RISK  INDICATOR:  HOTEL  OR  MOTEL."    Plaintiff  lived  at  that

address for one single six-month period, and it was an apartment, not a hotel or motel.

d)      Pages four and five also contain eight separate entries for an address on Ranch Road in Austin, Texas.  Plaintiff only lived at that address for one period of time.

e)      Page four contains six separate entries for an address on Trimier Ave in Kileen, Texas.  Plaintiff only lived at that address for one period of time.

f)      Page five contains three entries for an address on Rainbow Parke Drive in Round Rock, Texas, with dates listed in 2009, 2010 and 2011.  Plaintiff only lived at that address for one continuous period of time, from 2009 to 2010.

g)      Pages five and six contain four separate entries for an address on Scofield Ridge Parkway in Austin, Texas.   Each entry includes the notation "HIGH RISK INDICATOR: ROOMING OR BOARDING HOUSE."   Plaintiff only lived at that address for one period of time, and it was an apartment, not a rooming or boarding house.

h)      Page five contains four separate entries for an address on West Parmer Lane, in Austin, Texas.  Plaintiff only lived at that address for one period of time.

i)      Page five contains three separate entries for an address on Riverside Drive, in Austin, Texas.  Plaintiff only lived at that address for one period of time.

j)      Page six contains four separate entries for an address on Xavier Circle in Minneapolis, Minnesota, with dates ranging from 2000 to 2005.  In fact, Plaintiff lived at that address for one period of time, from 1996 to 2004.

k)      Page six contains four separate entries for an address on 46th Street in Killeen, Texas.  Plaintiff never lived at that address.

l)   Page six contains three separate entries for an address in Fort Hood, Texas. Plaintiff lived at that address for one period of time.

m)   Page six contains an entry for an address on Rio Grande Street, in Austin, Texas, with the notation: "HIGH RISK INDICATOR: NURSING AND PERSONAL CARE FACILITY."  That notation is incorrect as it is not a nursing or personal care facility, but an apartment building.

37.   Defendant's inclusion of self-contradictory and duplicative address information in Plaintiff's report violates 15 U.S.C. § 1681e(b) in at least two ways.  First, the inclusion of duplicative information creates an inaccurate and adverse presentation of Plaintiff to prospective employers.  By showing that Plaintiff had lived at 53 separate addresses over a thirteen year period, instead of only 19 separate addresses, Defendant portrayed Plaintiff as substantially less geographically stable than he actually is.  Second, the inclusion of inaccurate information regarding the dates when Plaintiff was "first" and "last" seen at given addresses violates § 1681e(b) because the information is patently inaccurate—there can only be one "first" and only one "last."

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

**A.    Defendant's Illegal Reporting of Outdated Adverse Information.**

38.   When a consumer reporting agency furnishes a consumer report, the agency is required to exclude adverse items of information which antedate the consumer report by more than seven years.  15 U.S.C. § 1681c(a)(5).

39.   Defendant's practice of including "high risk" warning indicators based on addresses where, according to Defendant, the consumer was "last seen" more than seven years ago violates a fundamental protection afforded to consumers under the FCRA, is contrary to the

unambiguous language of the statute, and is counter to longstanding judicial and regulatory guidance.  *See, e.g.,* FTC, *Forty Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations*, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Infosystems, Inc.*, 557 F. Supp. 2d 688 (C.D. Cal. 2008) (holding that the FCRA prohibits even *alluding* to existence of unreportable adverse information).

40.     Defendant's consumer reports are produced in an automated fashion from electronic databases.

41.     As part of the process of assembling consumer reports, these databases utilize a variety of algorithms to ensure that information reported "matches" the consumer who is the subject of the report.  (*See* Exhibit 3, http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf, at 22.)

42.     In the same way that Defendant uses algorithms to ensure that personally identifying information in a report matches the subject of the report's information, it is standard practice for consumer reporting agencies to write algorithms "to filter out obsolete credit information." (*See* Exhibit 4, www.naca.net/issues/credit-reporting-problems.)

43.     As one of the largest consumer reporting agencies, and one which invests heavily in technology, Defendant is aware of the power of algorithms, and their usefulness in structuring consumer reports.

44.     Given its awareness and technical prowess, Defendant, consistent with standard industry practices, could have easily written an algorithm to ensure that all of its reports would

exclude "high risk" warning labels associated with addresses where the "first seen" and "last seen" dates both predate the report by more than seven years.

45.     It is standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated.  *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007).  Yet, Defendant failed to implement a purge date in its systems.

46.     In addition to failing to implement automated procedures to avoid statutory violations, Defendant also failed to have the report properly reviewed by an individual who was trained in the FCRA, and specifically, in the requirements of 15 U.S.C. § 1681c.  Had Defendant had a properly trained individual review this report, these problems would have been easily detected.

47.     By failing to utilize appropriate algorithms, purge dates, or manual review, Defendant's practices and procedures for excluding adverse information older than seven years fell far below industry standards and constitute knowing and reckless disregard for Defendant's statutory obligations.

**B.     Defendant's Illegal Failure to Adopt Reasonable Procedures to Ensure Maximum Possible Accuracy.**

48.     Consumer reporting agencies are required to adopt reasonable procedures to ensure maximum possible accuracy of the information included in the reports they issue.  15 U.S.C. § 1681e(b).

49.     The obligations of 15 U.S.C. § 1681e(b) require both that the information presented in consumer reports is actually accurate, and also that the information is presented in such a way as to not be misleading.

50.     The address history information in Defendant's report is inaccurate in two ways. First, it is inaccurate on its face.  Second, it is presented in a misleading fashion.

51.     Defendant's reports are inaccurate on their face because they contain "first seen" and "last seen" dates for the same address, which are not the same as one another.  This internally inconsistent information is obviously not accurate, as the very meaning of "first" and "last" is that they are exclusive.  There can only be one "first" and only one "last."  Yet, Defendant's report provides multiple "first" and "last" dates for the same address.

52.     Defendant could have easily written an algorithm that would identify circumstances in which its reports were self-contradictory as to the "first" and "last" seen dates, so that Defendant could take appropriate steps to identify the correct dates.  However, Defendant failed to do so.

53.     Alternatively, or additionally, Defendant could have had properly trained human beings manually review its reports before they were issued to ensure that they did not include self-contradictory information.  Yet, Defendant failed to do so.

54.     Defendant's decision to include numerous entries regarding the same address also causes Defendant's reports to be inaccurate.

55.     Reports that contain factually correct information but nonetheless mislead their readers are neither maximally accurate nor fair to the consumers who are the subjects of such reports.  Reporting the same item of information multiple times is misleading.  *See Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010).

56.     Consumer reporting agencies' obligation to ensure maximum possible accuracy includes an obligation to exclude multiple entries for the same item of information.  In the

context of reporting criminal offenses, the *Smith* court noted that duplicative reporting "creates an adverse presentation."  *Id.* at 436.

57.     The Federal Trade Commission ("FTC") has sued at least one consumer reporting agency for reporting criminal incidents more than once in a report, and other consumer reporting agencies already make efforts to identify and delete duplicative entries.  *See, e.g., U.S. v. Hireright Solutions, Inc*., No. 12-cv-1313, Stipulated Final Judgment, ECF No. 3 at 4 (D.D.C. Aug. 29, 2012) (stating that HireRight is enjoined from "failing to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in a single report").

58.     Defendant is a member of the National Association of Professional Background Screeners ("NAPBS").  NAPBS has informed its members of the FTC's case against HireRight and the dangers of duplicative reporting of criminal information.

59.     Defendant could have easily written an algorithm which would identify instances where the same address was being reported more than once in a given report.  Yet, Defendant failed to do so.  Similarly, Defendant could have implemented manual review of its reports to ensure each address was only reported once.  Yet, Defendant failed to do so.

60.     By failing to adopt any quality control procedures whatsoever to ensure that the dates in its reports were accurate, and by failing to eliminate duplicative entries, Defendant violated the FCRA's core statutory mandate of maximum possible accuracy.

61.     Defendant knew that its address history information was inaccurate and unreliable.  Indeed, Defendant attempted to disclaim the contents of the "Social Security Trace" by including a disclaimer in its reports warning the user away from relying on the data. Specifically, Defendant includes the following:

```
END-USER IS  NOTIFIED  THAT  FOR  LEGAL  AND PRACTICAL  REASONS  INFORMATION
OBTAINED  THROUGH A SOCIAL  SECURITY NUMBER  TRACE  SHOULD BE  USED  ONLY TO
VERIFY  THE INFORMATION  PROVIDED  BY THE  CONSUMER  ON  HIS/HER  EMPLOYMENT
APPLICATION. INFORMATION  OBTAINED  THROUGH  A SOCIAL  SECURITY NUMBER TRACE
SHOULD  NOT  BE  USED ALONE OR IN  CONJUNCTION WITH ANY  OTHER INFORMATION TO
MAKE AN EMPLOYMENT DECISION.
```

62.    Consumer reporting agencies cannot absolve themselves of the legal responsibility to maintain reasonable procedures to ensure maximum possible accuracy by including disclaimers in their reports purporting to warn users that the information included therein is unreliable.

63.    Defendant knew its customers would rely on the address information for employment purposes, and fully intended for them to do so.  Defendant's customers certified to Defendant, consistent with 15 U.S.C. § 1681b(b)(1), that they were using the reports for employment purposes.  Defendant intentionally provided "high risk" labels in the Social Security Trace section of its reports so that its customers would, and could, rely on that data in making employment decisions.  If, as Defendant's disclaimer claims, the address information was to be used for address verification purposes only, then there would be no need for Defendant to identify certain addresses as "high risk."

64.    Moreover, Defendant's disclaimer explicitly advises its customers to use the unreliable "first" and "last" address information to "verify" other information provided to the customer by the consumer during the job application process.

65.    Defendant's disclaimer demonstrates that its violations were knowing, or at the very least, reckless.

**C.    Defendant's Legal Violations Harmed Consumers.**

66.    Employers increasingly rely on reports compiled by consumer reporting agencies in making hiring decisions.  *See* FTC, Data Brokers: A Call for Transparency and Accountability

(2014), *available at* https://www.ftc.gov/system/files/documents/reports/ data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527

databrokerreport.pdf (discussing the dramatic expansion and availability of consumer data collection by consumer reporting companies and how the consumer reports they compile are increasingly detailed and voluminous, yet frequently prone to inaccuracy); Brief for Massachusetts, et al. as Amici Curiae Supporting Respondent, *Spokeo, Inc. v. Robins*, No. 13-1339, 2015 WL 5316995 (U.S. Sept. 8, 2015) ("While the commercial use of consumer data profiles is not new, emerging technologies and the digitization of data have dramatically expanded the volume and commercial availability of ever-more detailed data.").[1]

67.     Given this reliance on reports prepared by consumer reporting agencies, it follows that labelling a candidate as "high risk" is likely to be taken at face value and hurt that individual's job prospects.  By presenting information about consumers in a way that made them appear to have moved around more than they actually had, and by labeling them as high risk based on the addresses where they had lived, Defendant's conduct made consumers less attractive to prospective employers than they otherwise would have been.

68.     By purporting to offer "the world's most robust background screening technology" and "unrivaled accuracy," Defendant encouraged employers to rely on facially inaccurate dates in its reports concerning consumers' representations about where they had lived and when.       *See*       http://www.sterlingbackcheck.com/About/The-SterlingBackcheck-

---

[1] *See also* Persis S. Yu and Sharon M. Dietrich, Broken Records: How Errors By Criminal Background Checking Companies Harm Workers and Businesses, Nat'l Consumer Law Center, 31 (Apr. 2012), http://www.nclc.org/images/pdf/pr-reports/broken-records-report.pdf ("Employers seldom read the disclaimers [aimed at circumventing FCRA obligations] and believe that the report they have bought is accurate and stands on its own.").

Difference.aspx#accuracy (last visited Dec. 2, 2015) ("[O]nly SterlingBackcheck can offer total accuracy").

**D.      Defendant's Legal Violations Are Knowing, Willful, and Driven By Self-Interest.**

69.     Defendant includes the section titled "Social Security Trace for County Searches" in its reports in order to identify all the places where the subject of the report may have lived, and to therefore identify jurisdictions where public records should be searched for information about the subject of the report.

70.     Defendant has a business interest in including as many addresses as possible so that it can encourage its clients to purchase criminal record searches from as many jurisdictions as possible.

71.     Defendant also includes this "Social Security Trace for County Searches" in its reports to make the reports appear voluminous, and to create the impression for its customers that the customers have purchased something of value.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff asserts his Claims for Relief against Defendant on behalf of himself and the Classes defined as follows:

**Outdated Adverse Information Class**

    i.   All individuals on whom Defendant prepared a background report from December 14, 2013 and continuing through the date the class list is prepared;

    ii.  Whose background report contains a social security trace which includes at least one address where both the "first" and "last" seen dates antedate the report by more than seven years; and

    iii. Where at least one of the addresses in (ii) includes a "high risk" indicator.

**Duplicative Information Class**

      i.    All individuals on whom Defendant prepared a background report from December 14, 2013 and continuing through the date the class list is prepared;

     ii.    Whose background report contains a social security trace which includes the same address repeated more than once.

**Inaccurate Address Information Sub-Class**

      i.    All individuals on whom Defendant prepared a background report from December 14, 2013 and continuing through the date the class list is prepared;

     ii.    Whose background report contains a social security trace which includes the same address repeated more than once; and

   iii.    Where the "first" or "last" seen dates for the duplicative entries for the same address are not identical to one another.

73.    Numerosity.  The Classes are so numerous that joinder of all class members is impracticable.  Defendant has produced thousands of reports covered by the claims in this case.

74.    Typicality.  Plaintiff's claims are typical of the members of the Classes. Throughout the class period, Defendant typically produced reports including outdated, duplicative and inaccurate address information.  The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard policies and practices.

75.    Adequacy.  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

76.    Commonality.  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including but not limited to:

    a)    Whether Defendant includes outdated, duplicative, and inaccurate address information in its reports;

b)       Whether Defendant's violations of the FCRA are willful;

c)       The proper measure of statutory damages and punitive damages; and

d)       The proper form of injunctive and declaratory relief.

77.       This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.  Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

78.       This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

79.       Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this First Amended Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Classes on an individual basis.  Class certification also will obviate the need for unduly duplicative litigation

that might result in inconsistent judgments concerning Defendant's practices.   Moreover, management of this action as a class action will not present any likely difficulties.   In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

80.     Plaintiff intends to send notice to all members of the Classes to the extent required by Rule 23.   The names and addresses of the class members are available from Defendant's records.

**CLAIM I**
**Reporting Outdated Adverse Information**
**15 U.S.C. § 1681c(a)**
***On behalf of the Outdated Information Class***

81.     Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-80.

82.     In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Outdated Information Class to third parties.

83.     The consumer reports provided by Defendant included addresses antedating the reports by more than seven years and which resulted in consumers being labeled as "high risk."

84.     The foregoing violations were willful.   Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Outdated Information Class members under 15 U.S.C. § 1681c(a).   Defendant's willful conduct is reflected by, *inter alia*, the following:

a)     Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

b)     Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no

contemporaneous evidence that Defendant determined that its conduct was lawful;

c)       Defendant was previously sued for similar conduct, paid monetary damages, and promised to no longer report old adverse information, yet persisted in doing so;

d)       Defendant could have easily established and used a computer-based algorithm to filter the database from which it produces consumer reports to ensure that addresses with "first" and "last" seen dates older than seven years were excluded from reports, or that consumers were not labeled as "high risk" based on those addresses;

e)       Defendant's conduct is inconsistent with the plain language of the statute; and

f)       Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically reporting old "high risk" information based on addresses that antedated the report by more than seven years.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

85.     Plaintiff and the Outdated Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

86.     Plaintiff and the Outdated Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

87.     Plaintiff and the Outdated Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## CLAIM II
### Duplicative Reporting
### 15 U.S.C. § 1681e(b)
### *On behalf of the Duplicative Information Class*

88.     Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-80.

89.     In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Duplicative Information Class to third parties.

90.     The consumer reports provided by Defendant included multiple entries for the same addresses.

91.     This resulted in consumers appearing to have lived at more locations than they actually had, and made them appear less geographically stable than they actually were.

92.     The inclusion of misleading and duplicative information on consumer reports violates the plain text of the FCRA, as well as FTC guidance.

93.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Duplicative Information Class members under 15 U.S.C. § 1681c(a).  Defendant's willful conduct is reflected by, *inter alia*, the following:

a)     Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

b)     Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c)     Defendant could have easily established and used a computer-based algorithm to filter the database from which it produces consumer reports to ensure that each addresses was only listed once;

d)     Defendant's conduct is inconsistent with the plain language of the statute;

e)     Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically including multiple address entries to create the misimpression that its reports were comprehensive, and to encourage its customers to purchase criminal records information from multiple jurisdictions;

f)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g)     Defendant attempted to disclaim responsibility for the inaccurate presentation of information in its reports by telling its customers not to rely on the reports, even though the sole purpose for which it sold the reports was to allow its customers to evaluate prospective employees, and even though the section it told its customers not to rely on labeled consumers as "high risk."

94.     Plaintiff and the Duplicative Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

95.     Plaintiff and the Duplicative Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

96.     Plaintiff and the Duplicative Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**CLAIM III**
**Reporting Inaccurate Information**
**15 U.S.C. § 1681e(b)**
***On behalf of the Inaccurate Address Information Class***

97.     Plaintiff realleges and incorporates the allegations set forth in Paragraphs 1-80.

98.     In return for money, Defendant furnished consumer reports on Plaintiff and other members of the Inaccurate Address Information Class to third parties.

99.     The consumer reports provided by Defendant included multiple entries for the same addresses.  The reports also included "first" and "last" seen dates for those addresses which were internally inconsistent, and therefore, by definition inaccurate.

100.    The inclusion of plainly inaccurate information on consumer reports violates the plain text of the FCRA.

101.    The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Inaccurate Address Information Class members under 15 U.S.C. § 1681c(a).  Defendant's willful conduct is reflected by, *inter alia*, the following:

a)      Defendant was founded in 1975, and the FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

b)      Defendant is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that Defendant determined that its conduct was lawful;

c)      Defendant could have easily established and used a computer-based algorithm to filter the database from which it produces consumer reports to ensure that each

address was only listed once and to ensure that its reports did not include internally inconsistent "first" and "last" seen dates;

d)     Defendant's conduct is inconsistent with the plain language of the statute;

e)     Despite the pellucid statutory text and there being a depth of guidance, Defendant adopted a policy of systematically including multiple address entries with inaccurate date information, to create the misimpression that its reports were comprehensive, and to encourage its customers to purchase criminal records information from multiple jurisdictions over multiple time periods;

f)     By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

g)     Defendant attempted to disclaim responsibility for the inaccurate presentation of information in its reports by telling its customers not to rely on the reports, even though the sole purpose for which it sold the reports was to allow its customers to evaluate prospective employees, and even though the section it told its customers not to rely on labeled consumers as "high risk."

102.     Plaintiff and the Inaccurate Address Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

103.     Plaintiff and the Inaccurate Address Information Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

104.     Plaintiff and the Inaccurate Address Information Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a) Determining that this action may proceed as a class action;

b) Designating Plaintiff as representative for the Classes and designating Plaintiff's Counsel as counsel for the Classes;

c) Issuing proper notice to the Classes at Defendant's expense;

d) Declaring that Defendant committed multiple, separate violations of the FCRA;

e) Declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and Defendant's obligations under the FCRA;

f) Awarding statutory and punitive damages as provided by the FCRA;

g) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h) Granting further relief, in law or equity, as this Court may deem appropriate and just as provided by the FCRA.

## DEMAND FOR JURY TRIAL

105. Plaintiff and the Classes demand a trial by jury.


Dated: April 8, 2016                    BERGER & MONTAGUE, P.C.

                                        /s/Joseph C. Hashmall
                                        Joseph C. Hashmall, MN Bar No. 392610*
                                        E. Michelle Drake, MN Bar No. 387366*
                                        43 SE Main Street, Suite 505
                                        Minneapolis, MN 55414
                                        Telephone: (612) 594-5999
                                        Fax: (215) 875-3000
                                        jhashmall@bm.net
                                        emdrake@bm.net

                                        BERGER & MONTAGUE, P.C.
                                        Shanon J. Carson**
                                        1622 Locust Street

Philadelphia, PA 19103
Telephone: 215.875.4656
Facsimile: 215.875.4604
scarson@bm.netGambles

NICHOLS KASTER, PLLP
Michele R. Fisher, NY Bar No. MF4600
4600 IDS Center,
80 South Eighth Street
Minneapolis, MN 55402
Tel. (612) 256-3200
Fax: (612) 215-6870

* admitted *pro hac vice*
**\**pro hac vice* forthcoming

ATTORNEYS  FOR  PLAINTIFFS  AND  THE
PUTATIVE CLASSES